Brier Creek Owners Ass'n v. Brier Creek Country Club Owners Ass'n, 2026 NCBC 42.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV024837-910

BRIER CREEK OWNERS
ASSOCIATION, INC.,

        Plaintiff/
        Counterclaim-
        Defendant

v.

BRIER CREEK COUNTRY CLUB
OWNERS ASSOCIATION, INC.,

        Defendant/
        Counterclaim-
        Plaintiff

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS**

1. This matter is before the Court on the Rule 12(b)(6) motion to dismiss filed by plaintiff Brier Creek Owners Association, Inc., seeking dismissal of the counterclaims asserted by defendant Brier Creek Country Club Owners Association, Inc. in this action. (ECF No. 12).

2. Having considered the counterclaims, the motion, and the written arguments of counsel, the Court **GRANTS** Plaintiff's motion as set forth below.

*Rayburn Cooper & Durham, P.A. by Matthew Tomsic and Rachel Emily Brinson for the Plaintiff/Counterclaim-Defendant.*

*Omer Law Firm by David Omer and Ragsdale Liggett PLLC by Benjamin Kuhn for Defendant/Counterclaim-Plaintiff.*

## I. BACKGROUND

3. The Court does not make findings of fact in ruling on a Rule 12(b)(6) motion to dismiss. Instead, for background, the Court summarizes the factual

allegations of the counterclaims that are most relevant to the Court's decision and accepts the well-pleaded allegations as true for purposes of this Order and Opinion.[1]

4.      Plaintiff/Counterclaim-Defendant Brier Creek Owners Association, Inc. is a North Carolina non-profit corporation and homeowners association with its principal office in Mecklenburg County, North Carolina. Much of Plaintiff's authority was delegated and assigned to it by a Declaration of Covenants, Conditions and Restrictions for Brier Creek executed on 30 March 1998 (the "**BCOA Declaration**"). The BCOA Declaration governs the use of certain real property in Wake County and Durham County known as the Brier Creek development ("**Brier Creek**").

5.      Under the BCOA Declaration, Plaintiff's "powers and functions" are generally

> limited to: (a) the maintenance, upkeep, operation, repair and replacement of those portions of the public right-of-way of Brier Creek Parkway not maintained by the North Carolina Department of Transportation or other governmental authority . . . including the maintenance, upkeep, operation, repair and replacement of any sidewalks or pathways, trails, trees, shrubs, flowers or other landscaping, sprinkler systems, lighting fixtures, medians, entrance features (including signs or monuments) located at the intersection of Brier Creek Parkway and Lumley Road (but excluding any such entrance signs or monuments at other intersections of Brier Creek Parkway with other roads or streets) utilities facilities, and irrigation and sprinkler systems, including the cost of the furnishing of any utility services to such facilities; and (b) the maintenance, upkeep, operation, repair and replacement of the Greenway should the Association own the Greenway as a result of the City of Raleigh or other governmental authority failing to take title to the Greenway. The Association shall have the power and authority to contract for the

---

[1] The Court observes that Defendant's counterclaims largely quote from real property declarations, most of which Defendant fails to relate in any way to its substantive causes of action beyond conclusory allegations—a problem compounded by Defendant's failure to respond to the motion to dismiss.

performance of such functions and to levy assessments to pay for such performance. Such assessments shall be limited to the actual cost of such maintenance, upkeep, operation, repair and replacement, plus any directly related expenses, plus a reasonable management and administrative fee.

(ECF No. 4 at 10–13, ¶¶ 1, 4–7, 10–13 and Ex. A).

6. Under the BCOA Declaration, assessments for maintaining the Brier Creek Parkway right of way are required to "be allocated among the members [of Plaintiff] in percentages approximately equal to the percentage of frontage on Brier Creek Parkway owned by each member compared to the total frontage on Brier Creek Parkway of all Property owned by all members of the Association," with such assessments against owners of property identified as the "Single Family Tract"[2] not to exceed 9% of the "total assessment for such purposes." (ECF No. 4 at 12–13, ¶¶ 11–12 & Ex. A, § 10.05). The BCOA Declaration imposes a similar limitation for "Greenway" assessments, limiting such assessments to 41% of the total for Single Family Tract owners. (ECF No. 4 at 13, ¶ 13).

7. However, Plaintiff is permitted to "to levy special assessments 'for the purpose of defraying, in whole or in part, the cost of any construction or reconstruction, unexpected repair or replacement of the Improvements and facilities to be maintained by the Association." (ECF No. 4 at 13, ¶ 14).

8. The BCOA Declaration contemplates the creation of a second homeowners association (i.e., defendant/counterclaim-plaintiff Brier Creek Country

---

[2] The "Single Family Tract" is certain real property identified in the BCOA Declaration as property that was to be used "solely for residential purposes" and for the development and operation of a golf course. (ECF No. 4, Ex. A, § 7.02).

Club Owners Association, Inc.) to serve as a member of Plaintiff and to serve as the property owners association for the "Single Family Tract" portion of Brier Creek. (ECF No. 4 at 12, ¶ 9 & Ex. A, § 7.02 and § 10.03).

9. On 30 May 2000, an Amended and Restated Declaration of Covenants, Conditions and Restrictions for Brier Creek Country Club Community (the "**BCCCOA Declaration**") was recorded, outlining Defendant's rights and obligations with respect to the Single Family Tract within Brier Creek. (ECF No. 4 at 13–14, ¶¶ 16–18).

10. Among other things, the BCCCOA Declaration permits Defendant to levy "special assessments 'for capital improvements or unusual or emergency matters[.]" (ECF No. 4, ¶ 19). Those assessments, however, may be used only in limited ways, "including for the 'improvement, use, operation, repair, replacement and maintenance of the Common Area, Landscaped Rights-of-Way and all improvements located therein or thereon'" and "'payment of any assessments owed by the Owners or by the Association pursuant to the" BCOA Declaration. (ECF No. 4 at 14, ¶¶ 20–21).

11. Defendant contends that Plaintiff has failed to comply with the BCOA Declaration in that it (i) incorrectly calculated the assessments to be paid by Defendant under that Declaration and (ii) has ignored the assessment limitations, which has resulted in Defendant paying assessments in excess of what it was obligated to pay. (ECF No. 4 at 14–15, ¶¶ 23–24).

12. Specifically, Plaintiff hosts an annual Fourth of July fireworks show that draws crowds to Brier Creek and generates "profits," "visibility," and "business and financial opportunities" for Plaintiff. However, Plaintiff requires Defendant to pay all expenses for the fireworks show and does not share profits with Defendant. (ECF No. 4 at 15, ¶¶ 25–26).

13. Defendant does not allege that Plaintiff improperly pays those amounts itself, nor does Defendant outline how Plaintiff "requires" it to pay these amounts. Defendant also does not tie the fireworks show to specific provisions of either the BCOA or BCCCOA Declarations.

14. Ultimately, Defendant conclusorily asserts that Defendant has been required (by undisclosed means) to pay for a fireworks show, that it has not been permitted to share in the benefits tangentially occurring as a result of the show, and that Defendant is dissatisfied as a result.

15. On 26 September 2025, Defendant filed its counterclaims in this action, asserting putative causes of action for (i) a temporary restraining order, preliminary and permanent injunction, (ii) declaratory judgment, (iii) breach of covenant, (iv) unjust enrichment, (v) breach of fiduciary duty, and (vi) unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes. The gravamen of Defendant's causes of action is that Plaintiff has violated its obligations under the BCOA Declaration with respect to amounts that it has billed Defendant. (*See generally* ECF No. 4).

16.     Plaintiff moved under Rule 12(b)(6) to dismiss Defendant's purported counterclaims for a preliminary injunction, unjust enrichment, breach of fiduciary duty, and violations of Chapter 75. (ECF No. 11).

17.     Defendant failed to serve a response in opposition to the motion, and the time to do so has expired. As a result, "the motion will be considered and decided as an uncontested motion." BCR 7.6; *cf. Thompson v. Bass*, 261 N.C. App. 285, 292 (2018) (deeming issue abandoned on appeal where appellant "failed to submit any meaningful argument" in support of his positions).

18.     With no response briefing served within the time permitted, the motion is ripe for resolution, and, in the exercise of judicial discretion, the Court resolves the motion without a hearing as permitted under Rule 7.4 of the Business Court Rules.

## II.    ANALYSIS

19.     When considering a Rule 12(b)(6) motion, the Court must determine "whether the allegations of the [counterclaim], if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted); *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692 (1991)).

20.     Thus, the Court treats the well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017).

21. Dismissal is proper if "(1) the [counterclaim] on its face reveals that no law supports the [] claim; (2) the [counterclaim] on its face reveals the absence of facts sufficient to make a good claim; or (3) the [counterclaim] discloses some fact that necessarily defeats the [] claim." *Corwin*, 371 N.C. at 615 (citations omitted).

22. The Court addresses each of Defendant's counterclaims in turn.

**A. Injunctive Relief**

23. Defendant's "First Claim for Relief" for injunctive relief fails as a matter of law.

24. Specifically, "[i]nasmuch as [Defendant] purports to assert 'claims' for injunctive relief, . . . such 'claims' inherently fail as a matter of law because, as this Court and others have repeatedly recognized, they are not independent causes of action or claims." *Evergreen Builder Sols., LLC v. Taylor*, 2025 NCBC LEXIS 174, at *32 (N.C. Super. Ct. Dec. 29, 2025) (citations omitted); *see also Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005) ("A preliminary injunction is an ancillary remedy, not an independent cause of action."); *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at *18 (N.C. Super. Ct. July 26, 2018) ("[I]njunctions are remedies, not independent causes of action." (citation omitted)).

25. Accordingly, the Court **GRANTS** Plaintiff's motion to dismiss as to the purported cause of action for injunctive relief, which the Court **DISMISSES without prejudice** to Defendant's ability to renew its request for such remedies at a later stage of this action if appropriate.

**B. Unjust Enrichment**

26. Similarly, Defendant's cause of action for unjust enrichment is also properly dismissed without prejudice.

27. "In North Carolina, to recover on a claim of unjust enrichment, Plaintiff must prove: (1) that it conferred a benefit on another party; (2) that the other party consciously accepted the benefit; and (3) that the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *Islet Scis., Inc. v. Brighthaven Ventures, LLC*, 2017 NCBC LEXIS 4, at *16 (N.C. Super. Ct. Jan. 12, 2017) (citing *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330 (2002)).

28. "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Atl. Coast Line R.R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96 (1966). However, "[i]f there is a contract between the parties[,] the contract governs the claim and the law will not imply a contract." *Booe v. Shadrick*, 322 N.C. 567, 570 (1988).

29. Here, Plaintiff argues that the unjust enrichment cause of action fails because (i) an express contract exists, (ii) the pleading at issue fails to comply with applicable notice pleading standards, and (iii) the cause of action is barred by the applicable statute of limitations. (ECF No. 12 at 3–6).

30. However, Defendant expressly asserts that its unjust enrichment cause of action is pleaded in the alternative to its express breach of contract cause of action.

(ECF No. 4 at 19, ¶ 56). Thus, the existence of a breach of contract cause of action does not necessarily bar the alternative unjust enrichment cause of action. *Cosma v. Fit Kitchen, LLC*, 2022 NCBC LEXIS 77, at \*3 (N.C. Super. Ct. July 18, 2022) (denying motion to dismiss unjust enrichment cause of action asserted in the alternative to an express breach of contract cause of action); *Rossabi Reardon Klein Spivey, PLLC v. Greater Greensboro Entm't Group, LLC* 2020 NCBC LEXIS 62, at \*18 (N.C. Super. Ct. May 8, 2020) ("Notwithstanding that an express contract precludes an implied contract concerning the same matter, it is also well established under North Carolina law that a party may plead claims in the alternative.").[3]

31.     Ultimately, however, Defendant pleads nothing more than conclusory allegations in support of its cause of action. These conclusory allegations fail to include factual allegations against Plaintiff supporting this cause of action, fail to provide notice under applicable notice pleading standards, and otherwise fail to state a claim upon which relief can be granted. *See* N.C. R. Civ. P. 8(a) (requiring a "short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief"); N.C. R. Civ. P. 12(b)(6).

---

[3] While Plaintiff argues that the parties' other pleadings, such as Plaintiff's complaint and Defendant's answer, admit the existence of an express contract, (ECF No. 12 at 3), this matter is currently before the Court on a Rule 12(b)(6) motion to dismiss. Thus, the Court expressly *does not* consider the purported admissions or allegations contained in other pleadings at this stage of the case. *Hillsboro Partners, LLC v. City of Fayetteville*, 226 N.C. App. 30, 32–33 (2013) ("As a general proposition, a trial court's consideration of a motion brought under Rule 12(b)(6) is limited to examining the legal sufficiency of the allegations contained within the four corners of the complaint" or counterclaim, as applicable.).

32. Specifically, in its limited factual allegations, Defendant alleges only that Plaintiff "has required [Defendant] to pay for all expenses associated with the Fireworks Show" and has not shared profits. (ECF No. 4 at 15, ¶ 26). Though it alleges that Plaintiff tangentially benefited from an influx of people to Brier Creek brought on by the fireworks show, (ECF No. 4 at 15, ¶ 25), Defendant does not allege that it paid the expenses *to*, *for*, or *on* behalf of Plaintiff, nor does it identify any other benefit that it directly conveyed to or bestowed upon Plaintiff. (ECF No. 4 at 15, ¶ 26).[4]

33. There is also no non-conclusory, factual allegation that Plaintiff consciously accepted any benefits from Plaintiff.

34. To the extent that Defendant separately and vaguely asserts later in its counterclaims that Plaintiff benefited "through the payment of [unspecified] monies" and that Plaintiff "accepted and kept the benefit of the [unspecified] funds," there is no indication (or reasonable inference to be made) that these "monies" or "funds" allegedly paid to Plaintiff have any relationship to a fireworks show or that they are otherwise the same "expenses" that Defendant was allegedly required to pay to unidentified parties. (ECF No. 4 at 19–20, ¶¶ 55–65).

35. Further, though Defendant alleges that Plaintiff knew that Defendant "expected to be compensated through the provision of goods and services," the pleading lacks any facts supporting this conclusory statement. (ECF No. 4 at 20,

---

[4] For example, there is no allegation that *Plaintiff* was obligated to pay for fireworks shows and that Plaintiff required Defendant to do so in Plaintiff's stead. Indeed, Defendant asserts that Plaintiff's position is that Defendant's "assessments are in arrears." Thus, it is unclear from the pleading whether Defendant ever actually paid any of the amounts, as opposed to merely being "required" (i.e., contractually obligated) to do so. (ECF No. 4 at 15, ¶ 28).

¶ 61). Indeed, the only allegation concerning discussions between the parties is Defendant's assertion that, in 2022 (apparently after years of annual fireworks shows), it began a "conversation calculated to correct Plaintiff's many actions in violation of the BCOA Declaration." (ECF No. 4 at 15, ¶ 27). There are no allegations that the conversation involved a request for compensation or that Defendant ever informed Plaintiff of its desire to share in the purported profits or benefits generated by the fireworks show. Nor are there factual allegations that permit an inference that Plaintiff had any reason to know of Defendant's purported desire to share in profits.

36.     Defendant's conclusory allegations fail to state a claim for unjust enrichment, so the Court need not, and does not, address Plaintiff's statute of limitations argument.

37.     Accordingly, the Court **GRANTS** Plaintiff's motion to dismiss as to the unjust enrichment cause of action, which the Court **DISMISSES without prejudice**.[5]

### C. <u>Breach of Fiduciary Duty</u>

38.     Next, Plaintiff moves to dismiss Defendant's cause of action for breach of fiduciary duty. Plaintiff argues that Defendant fails to allege facts showing that there is a fiduciary relationship between the parties and that Defendant's allegations are purely conclusory. (ECF No. 4 at 21, ¶¶ 67–69). The Court agrees.

---

[5] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court . . . ." *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013) (citation omitted). With respect to each of the causes of action addressed by this Order and Opinion, the Court has carefully considered whether dismissal with or without prejudice is appropriate.

39. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Chisum v. Campagna*, 376 N.C. 680, 706 (2021).

40. Defendant asserts that Plaintiff "and its Board of Directors owe and occupy [sic] a fiduciary duty" to Defendant and Defendant's members and that Plaintiff has a "fiduciary duty" to properly apply, calculate, and levy assessments against Defendant. (ECF No. 4 at 21, ¶¶ 69–71).

41. Defendant has pleaded no facts, however, to indicate the existence of a fiduciary relationship between the parties. In fact, beyond conclusory allegations that Plaintiff has "required" Defendant to pay for an fireworks show, there are hardly any allegations regarding the parties' relationship.

42. For example, even if Defendant is a member of Plaintiff, as the BCCCOA Declaration suggests, a corporation does not owe a fiduciary duty to its shareholders. *DS & T II, Inc. v. D & E Tax & Account., Inc.*, 2021 NCBC LEXIS 87, at *15 n.5 (N.C. Super. Ct. Oct. 4, 2021); *Buttonwood Tree Valve Partners L.P. v. R.L. Polk & Co.*, 2014 Del. Ch. LEXIS 141, at *1 (Del. Ch. 7 Aug. 2014) ("A corporation owes no fiduciary duties to its owners, the stockholders[.]"); *see also Green v. Freeman*, 367 N.C. 136, 142 (2013) ("The general rule is that '[s]hareholders, creditors or guarantors of corporations generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation.'" (citation omitted)).

43. Further, the only conduct to which Defendant points in its counterclaim for the alleged breaches of a fiduciary duty are conclusory allegations that Plaintiff has improperly levied assessments against Plaintiff contrary to the BCOA and

BCCCOA Declarations and declined to engage in discussions with Defendant—neither of which supports the existence of a fiduciary duty or the breach of any such purported duty, as opposed to a potential breach of contract via the Declarations.

44. Construing the allegations in the light most favorable to Defendant, Defendant fails to plead any facts supporting a basis for the existence of a fiduciary duty or a breach of a fiduciary duty.

45. Accordingly, the Court **GRANTS** Plaintiff's motion to dismiss as to the breach of fiduciary duty cause of action, which the Court **DISMISSES with prejudice**.

### D. Chapter 75

46. Finally, Defendant asserts that Plaintiff has violated Chapter 75 and committed unfair or deceptive trade practices based on

> its longstanding practice of levying incorrectly-calculated and excessive assessments, requiring [Defendant] to fully fund the annual Fireworks Show, failing and refusing to allow [Defendant] to share in the profits generated thereby, failing and refusing to discuss the matters alleged herein with the Counter-claimant [Defendant], and persisting in its practice of demanding payment of assessments to which it knows, or reasonably should know, it is not entitled.

(ECF No. 4 at 23, ¶ 75).

47. Defendant's allegations are insufficient to withstand Plaintiff's motion.

48. To state a claim for relief under Chapter 75 of the North Carolina General Statutes for alleged unfair or deceptive conduct, a party "must show: (1) [the opposing party] committed an unfair or deceptive act or practice; (2) in or affecting

commerce; and (3) that [the claimant] was injured thereby." *McKinnon v. CV Indus.*, 213 N.C. App. 328, 340 (2011) (citations omitted).

49.     "It is well recognized, however, that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1." *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992) (internal citations omitted).

50.     Instead, "'[s]ubstantial aggravating circumstances' must attend the breach in order to recover under the Act. A violation of Chapter 75 is unlikely to occur during the course of contractual performance, as these types of claims are best resolved by simply determining whether the parties properly fulfilled their contractual duties." *Mitchell v. Linville*, 148 N.C. App. 71, 75 (2001) (internal citation omitted).

51.     Moreover, "[t]o be in or affecting commerce, the [claimant] must prove the [opposing party's] act was related to its 'business activities,' or its 'regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized.'" *White v. Thompson*, 364 N.C. 47, 48 (2010) (internal quotations omitted).

52.     Defendant fails to plead facts suggesting any conduct by Plaintiff rising to the level of unfair or deceptive conduct.

53.     Even then, the connections are tenuous. Defendant points to no factual basis to suggest that Plaintiff was legally obligated to "discuss the matters" at issue

with Defendant or to permit Defendant "to share in the profits" from the fireworks show. (ECF No. 4 at 23, ¶ 75). Defendant also alleges no aggravating circumstances or other facts that might support a Chapter 75 claim. (ECF No. 4 at 23, ¶ 75).

54. Construing the few well-pleaded, non-conclusory allegations of the counterclaims in the light most favorable to Defendant, the Court concludes that Defendant has failed to state a claim under Chapter 75.

55. Therefore, the Court **GRANTS** the motion to dismiss the Chapter 75 cause of action, which the Court **DISMISSES with prejudice**.

### III.    CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's motion to dismiss as set forth above.

**SO ORDERED**, this 27th day of April 2026.

/s/ Matthew T. Houston
Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases